STATE EX REL. SICILIANO, Plaintiff and Respondent, v. JOHNSON and others, Defendants and Appellants: BAYFIELD ELECTRIC COOPERATIVE, INC., Defendant.

*October 29—November 26, 1963.*

For the appellants there was a brief by *Norlin & Spears* of Washburn, and oral argument by *Walter T. Norlin.*

For the respondent there was a brief by *Pray, Pray & Clark* of Ashland, and oral argument by *Theron P. Pray.*

DIETERICH, J. Sec. 294.04 (1) (a), Stats.,[1] authorizes the attorney general to commence an action in *quo warranto* when any person shall usurp, intrude into, or unlawfully hold any office in a corporation created by the authority of the state. Sec. 294.04 (2) [2] provides that such action may be brought in the name of the state by a private person on his own complaint when the attorney general refuses to act. Under sec. 990.01 (25), the term "officer," when used in connection with a corporation, includes a director of the corporation. This statute has been in force since before Johnson, Nortunen, and Elonen were elected to the board of directors of the Cooperative. See sec. 370.01 (25), Stats. 1951.

The instant action was commenced in the name of the state by the relator, S. P. Siciliano, and the record contains a letter from the attorney general declining to bring the action. The relator alleged in the complaint that the individual defendants were unlawfully holding office as directors of the Cooperative; that the relator was a member of the Cooperative at all times material to the action, and that the Cooperative was created by the authority of the state of Wisconsin.

The following facts were stipulated to by the parties. The Bayfield Electric Cooperative, Inc., was incorporated in

---

[1] Sec. 294.04. "WHEN ACTION MAY RE BROUGHT. (1) An action may be brought by the attorney general in the name of the state, upon his own information or upon the complaint of any private party, against the parties offending in the following cases:

"(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state; . . ."

[2] Sec. 294.04 (2). "Such action may be brought in the name of the state by a private person on his own complaint when the attorney general refuses to act or when the office usurped pertains to a county, town, city, village or school district."

1940. Among the bylaws adopted at the first meeting of the incorporators was the following:

"Directors. Section 2. Qualifications and Tenure. . . . no person shall take or hold office as a director who is the incumbent of or candidate for an elective public office in connection with which a salary is paid."

This provision has not been changed, and remains in full force and effect at the present time. At the time of the first meeting, five of the seven incorporators were serving as town chairmen in their respective localities. Two of them were being paid on a per diem basis, and two received fixed compensation of $100 and $150 per annum, these figures having been fixed by the annual meetings of their towns. The fifth man's compensation is unknown. Each of the seven original incorporators was aware of these facts.

Since the organization of the Cooperative, at least 11 persons have been members of its board of directors while holding the office of town chairman, and no action has ever been commenced for the purpose of questioning the right of any person to serve as town chairman and as a member of the board at the same time. There has never been any attempt to amend, alter, or repeal the bylaws of the Cooperative relative to such dual capacity. Directors are elected by the Cooperative at annual meetings, to serve three-year terms.

Defendant Bernard Johnson was elected chairman of the town of Drummond, Bayfield county, in 1945, and became a director of the Cooperative in 1953. At the annual meeting of the electors of the town of Drummond, held on April 3, 1956, the following motion was made and carried: "The Salary of the Town Chairman be increased from $400 per year to $500." He currently is the town chairman of the town of Drummond and also a director of the Cooperative.

Defendant Matt Nortunen was elected chairman of the town of White River, Ashland county, in 1957, and became

a director of the Cooperative in 1958. The official minutes of the annual meeting of electors of the town of White River, held April 3, 1962, contain the following: "Town Board members' salaries were brought up. Motion made, seconded and carried the salaries be left as they are at present." At the time of the 1962 meeting the salary of the town chairman was $250 per year. Nortunen is a director of the Cooperative and town chairman at the present time.

Defendant Toivo Elonen was elected chairman of the town of Oulu, Bayfield county, in 1961, and became a director in September, 1962. The official records of the meeting of the electors of the town of Oulu reveal that in 1957, the "salary" of the town chairman was set at $325 per year. The minutes of the 1962 meeting contain the entry: "The town salaries remain the same as last year." Elonen is currently town chairman and a director of the Cooperative. When Elonen was nominated for a directorship of the Cooperative in 1962, the nominations committee considered the eligibility of town chairmen to serve on the board and were advised by the attorney for the Cooperative that the bylaw applied only to partisan and political offices and not to the office of town chairman. Thereupon the committee nominated, among others, Toivo Elonen, who was then known to be chairman of his town.

It was also stipulated that the offices of chairmen of the towns of Drummond, White River, and Oulu, are, and at all times material to the action have been, elective public offices.

The trial court found the following facts: That the action was properly commenced by the relator pursuant to authorization duly obtained from the attorney general; that each of the individual defendants was the duly elected chairman of his own town and each was compensated by payment to him of an annual salary; and that the defendants held and exercised the office of director of the Cooperative. In a written

memorandum opinion, the trial court concluded that each of the defendants is the incumbent of an elective public office and each is being paid a salary in connection with this office, within the prohibitions of the bylaw.

The sole issue involved on appeal is whether the office of town chairman, which the parties have stipulated to be an elective public office, comes within the prohibition of the bylaw of the Cooperative. It is a general rule that the principles which govern the construction of contracts also govern the construction and interpretation of corporate bylaws. See 13 Am. Jur., Corporations, p. 290, sec. 160; *State ex rel. Attorney General v. Conklin* (1874), 34 Wis. 21. It is equally true that where the terms of a contract are plain and unambiguous, the duty of the court is to construe it as it stands, giving effect to the plain meaning of the language used, even though the parties may have placed a different construction on it. *Northwestern Port Huron Co. v. Krubsack* (1910), 143 Wis. 527, 531, 128 N. W. 51; *Depner v. United States Nat. Bank* (1930), 202 Wis. 405, 410, 232 N. W. 851; *George J. Meyer Mfg. Co. v. Howard Brass & Copper Co.* (1945), 246 Wis. 558, 574, 18 N. W. (2d) 468; *Cernohorsky v. Northern Liquid Gas Co.* (1955), 268 Wis. 586, 592, 593, 68 N. W. (2d) 429.

Another rule of construction pertinent to the instant action is the one requiring that words appearing in a contract be given their common and ordinary meaning. *Sands v. Kaukauna Water Power Co.* (1902), 115 Wis. 229, 232, 91 N. W. 679; *Rosenthal v. Insurance Co. of North America* (1914), 158 Wis. 550, 553, 149 N. W. 155; *Skelly Oil Co. v. Peterson* (1950), 257 Wis. 300, 306, 43 N. W. (2d) 449. The bylaw in question states plainly that a person cannot be a director of the Cooperative who is also the incumbent of "an elective public office in connection with which a salary is paid." The parties stipulated that each of the individual defendants, as a town chairman, is the incumbent of an elec-

tive public office. In *Estate of Riebs* (1959), 8 Wis. (2d) 110, 114, 98 N. W. (2d) 453, this court set forth the definition of "salary" contained in Webster's New International Dictionary (2d ed., unabridged), as being the customary and accepted usage of that term. The current (3d ed., unabridged), Webster's New International Dictionary defines "salary" as follows:

". . . fixed compensation paid regularly (as by the year, quarter, month, or week) for services . . . esp. such compensation paid to holders of official, executive, or clerical positions . . . remuneration for services given . . ."

Sec. 60.60, Stats., which deals with compensation of town officials, provides as follows:

"COMPENSATION OF TOWN OFFICERS. (1) The compensation of town supervisors and town clerks, in counties having a population of less than 500,000, shall be fixed by the annual town meeting at not less than $5 nor more than $12 per day. . . . In lieu of a per diem compensation, the annual town meeting may establish an annual salary for town supervisor, clerk and treasurer. . . ."

Under sec. 60.19, Stats.,[3] a town chairman is also a town supervisor. Each of the towns involved pays its chairman on an annual basis, and it has been seen that each used the term "salary" or "annual salary" when setting the compensation for town chairman.

The language of the bylaw in question is patently clear as it expressly prohibits incumbents of elective public offices in connection with which a salary is paid from serving on the board of directors of the Cooperative.

The election, therefore, of Bernard Johnson, Matt Nortunen, and Toivo Elonen to the board of directors of the Co-

[3] "ELECTION OF OFFICERS; SPECIAL PROVISIONS. (1) (a) Biennially, in odd-numbered years, at the annual town meeting there shall be elected . . . 3 supervisors, one of whom shall be designated on the ballots as chairman, . . ."

operative was in violation of the bylaw. Hence their election to the board was void, and each of them is unlawfully holding and exercising the office of member of said board. The judgment of the trial court ousting and excluding the individual defendants from membership on the board of directors of the Bayfield Electric Cooperative, Inc., is affirmed.

*By the Court.*—Judgment affirmed.