Duane S. JORGENSEN, and Sharon A. Jorgensen, Plaintiffs-Appellants,

v.

WATER WORKS, INC., James S. Barber, Doreen A. Barber, Gary W. Tesch, and Mary H. Tesch, Defendants-Respondents.†

Court of Appeals

*No. 97–1729. Submitted on briefs January 22, 1998.—Decided April 23, 1998.*

(Also reported in 582 N.W.2d 98.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Stephen D. Willett* of *Willett & Klein, S.C.* of Phillips.

On behalf of the defendant-respondent, Water Works, Inc., the cause was submitted on the brief of *H. James Tuchscherer* of *Nash, Podvin, Tuchscherer, Huttenburg, Weymouth & Kryshak, S.C.* of Wisconsin Rapids.

On behalf of the defendants-respondents, James S. Barber, Doreen A. Barber, Gary W. Tesch, and Mary H. Tesch, the cause was submitted on the brief of *Gary L. Dreier* of *First Law Group S.C.* of Stevens Point.

Before Vergeront, Roggensack and Deininger, JJ.

VERGERONT, J. Duane and Sharon Jorgensen, shareholders in Water Works, Inc., appeal the summary judgment against them in favor of the corporation and the four other shareholders: Doreen and James Barber, and Gary and Mary Tesch. The Jorgensens contend that the trial court erred in deciding the motion for summary judgment before a receiver was appointed and they had the opportunity for discovery, and also erred in dismissing these claims: direct claim for breach of a fiduciary duty to them as minority shareholders; derivative claim (dismissed without prejudice); claim for judicial dissolution of the corporation; and claim for breach of contract.

We conclude that the trial court acted properly within its discretion in not postponing its decision on the motion for summary judgment. We conclude that summary judgment on two of the claims—the direct

claim for breach of fiduciary duty and the claim for judicial dissolution—was in error because there were genuine issues of material fact on those claims. However, the trial court correctly granted summary judgment on the derivative claim; and, since the complaint did not state a claim for breach of contract, the Jorgensens are not entitled to a reversal and a trial on that claim based on the pleadings before us. We therefore affirm in part, reverse in part and remand.

## BACKGROUND

The Jorgensens and the individual defendants are the shareholders of the corporate defendant, Water Works, Inc., a closely held Wisconsin corporation that operates an automatic motor vehicle washing facility in Wisconsin Rapids, Wisconsin. Water Works was incorporated in 1988 at which time 204 shares were issued to six persons: the Jorgensens; their daughter, Doreen Barber; her husband, James Barber; and two family friends, Gary Tesch and Mary Tesch. Each received thirty-four shares of Water Works stock and each became a director in the corporation. Duane Jorgensen was elected president; Sharon Jorgensen, Gary Tesch and James Barber were elected vice presidents; Mary Tesch was elected treasurer; and Doreen Barber was elected secretary.

After disagreements occurred between the Jorgensens and the other four shareholders, the Jorgensens filed this complaint in September 1996. The complaint described the formation of the company and the Jorgensens' financial investment in it. The complaint alleged that in 1995 it came to Duane Jorgensen's attention that certain of the officers and directors of the corporation were engaged in illegal activities on property owned by the corporation and were using the

766

corporation's property for their own personal benefit. According to the complaint, Duane Jorgensen insisted this cease, and, as a result, the directors became deadlocked in the management of corporate affairs.

The complaint asserted three causes of action pertinent to this appeal.[1] The first, against the corporation, the Tesches and the Barbers, asserted that the deadlock was causing irreparable injury to the corporation and affairs of the corporation could no longer be conducted to the advantage of the shareholders generally; and the directors in control were acting in an illegal, oppressive and fraudulent manner. The Jorgensens requested judicial dissolution and appointment of a receiver.

The second cause of action, against the four individuals only, asserted that they owed a fiduciary duty to the corporation and its minority shareholders, the Jorgensens, and that they breached their fiduciary duty by illegally and fraudulently, pursuant to a conspiracy, diverting corporate assets or using them for their own personal use and also breached their fiduciary duty by paying fees to themselves which are in fact dividends.

The third cause of action, against only the Tesches, asserted that the Tesches used the corporate assets for their own benefit, unjustly enriched themselves and engaged in illegal activities on corporate grounds while using corporate assets. When this activity was discovered, the complaint alleged, the Tesches entered into a conspiracy to remove the Jorgensens from their positions as officers and directors in an attempt to continue to engage in the illegal activities.

---

[1] A fourth cause of action concerning the Tesches' promissory note to the Jorgensens was resolved by agreement between the parties.

After filing an answer and deposing Duane and Sharon Jorgensen, the defendants moved for summary judgment. In support of their motion, they submitted portions of Duane Jorgensen's deposition as well as the affidavit of Mary Tesch. We summarize the pertinent portions of the deposition, and, because we are reviewing summary judgment against the Jorgensens, we do so in the light most favorable to the Jorgensens, drawing all reasonable inference in their favor. *See generally Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980).

The written business plan submitted to the bank by the shareholders when the corporation was first formed states that Duane Jorgensen would be in charge of management and that the six shareholders would be permanent directors. There was also verbal agreement among the shareholders that Duane Jorgensen would oversee management as long as he lived. Payments were made to every shareholder once a week since 1989, although Duane Jorgensen did not know how those payments were described in the corporation's books. He saw no difference between a dividend and a director's fee, or between a dividend and compensation for being an officer. Each year the shareholders sat down and decided the amount of the weekly payments based on the profits.

Duane averred that he did not receive a payment because he had problems with Social Security. Sharon did not have problems with Social Security so she received the payment for both of them. She received $925 per week in the beginning of 1995 and it dropped to $725 per week beginning in June 1995. This weekly payment was what he and Sharon lived on. The Jorgensens were voted off the board of directors and their payments were discontinued at the meeting on July 12,

1996, and they were not allowed to have any say in how the corporation was run or in the distribution of money. Duane Jorgensen was voted off the board of directors because the others said he was bullying them and Sharon Jorgensen was voted off so they could stop the payment that went to her for both of them. Duane Jorgensen considers that payments to the other four without paying him and Sharon anything to be a misapplication of corporate assets. He has no other evidence of misapplication of corporate assets. The company is still operating and he knows of no problems with creditors. He is unaware of any 50/50 tie vote of the directors, but he believes there is a deadlock because Mary Tesch and the other defendant shareholders will not communicate with him.

In opposition to the motion for summary judgment, the Jorgensens submitted their counsel's affidavit which asked that a receiver be appointed to conduct discovery and explained why one was needed. At some time, not entirely clear from the record, the Jorgensens moved for appointment of a receiver. The court scheduled that motion and the motion for summary judgment for the same date, March 12, 1997. At the hearing, the trial court addressed the summary judgment motion first. The court dismissed the first cause of action—requesting a receiver and dissolution—with prejudice on the ground that no factual material had been presented to show that the statutory criteria of § 180.1430, STATS., were met.[2] The court con-

---

[2] Section 180.1430, STATS., provides in part:

> Grounds for judicial dissolution. The circuit court for the county where the corporation's principal office or, if none in this state, its registered office is or was last located may dissolve a corporation in a proceeding:
>
> . . . .

cluded that under *Read v. Read,* 205 Wis. 2d 558, 556 N.W.2d 768 (Ct. App. 1996), the Jorgensens could not bring any of the claims in their own names for their personal benefit but only as a derivative action on behalf of the corporation. The court then concluded that the Jorgensens did not comply with the notice requirements of § 180.0742, STATS., for a derivative action. The court dismissed the second and third causes of action, but without prejudice, so that the Jorgensens could bring a derivative action on proper notice.

## DISCUSSION

■ A party is entitled to summary judgment if the party's pleadings and affidavits show that there is no genuine issue as to any material fact and the party is entitled to a judgment as a matter of law. Section 802.08(2), STATS. When reviewing the trial court's decision on a motion for summary judgment, we apply the standards set forth in § 802.08, in the same manner as

(2) By a shareholder, if any of the following is established:

(a) That the directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock and, because of the deadlock, either irreparable injury to the corporation is threatened or being suffered or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally.

(b) That the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent.

(c) That the shareholders are deadlocked in voting power and have failed, for a period that includes at least 2 consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election and, if necessary, qualification of their successors.

(d) That the corporate assets are being misapplied or wasted.

the trial court. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 476–77. We initially examine the pleadings to determine whether a claim has been stated and whether a material issue of fact is presented. *Id.* If the complaint states a claim and the pleadings show the existence of factual issues, we examine the moving party's submissions to determine whether the moving party has made a prima facie case for summary judgment. *Id.* If the moving party has done so, we examine the submissions of the opposing party to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. Any reasonable doubt about the existence of a genuine issue of material fact should be resolved against the moving party. *Id.*

*Timing of Decision on Summary Judgment Motion*

■

The Jorgensens contend that since they did not conduct discovery, the trial court should not have granted the defendants' motion for summary judgment. The reason they did not conduct discovery, they explain, is that they were waiting for the court to grant their request for the appointment of a receiver, and the receiver would then conduct discovery. They rely on § 802.08(4), STATS., to support their contention that the trial court had the authority to delay ruling on the summary judgment motion in order to allow them to be heard on their motion for the appointment of a receiver. Section 802.09(4), STATS., provides:

> WHEN AFFIDAVITS UNAVAILABLE. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated pre-

sent by affidavit facts essential to justify the party's opposition, the court may refuse the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as just.

The exercise of this authority is discretionary. *Mathias v. St. Catherine's Hospital, Inc.*, 212 Wis. 2d 540, 569 N.W.2d 330 (Ct. App. 1997). We affirm discretionary determinations if the trial court applies the correct law to the facts of the record and reaches a reasonable result. *See Rodak v. Rodak,* 150 Wis. 2d 624, 631, 442 N.W.2d 489, 492 (Ct. App. 1989).

The scheduling order entered on December 30, 1996, specifically stated that the motion for summary judgment would be heard before the motion for dissolution and appointment of a receiver on March 12, 1997. Therefore, the Jorgensens and their counsel had ample notice that they should be prepared to oppose the motion for summary judgment before their motion was decided. The hearing began with consideration of the motion for summary judgment. Although the Jorgensens' counsel argued that the trial court should deny the summary judgment motion, or continue it until a receiver was appointed and the receiver conducted discovery, he also acknowledged to the court that he had agreed to the procedure to decide the summary judgment motion first.

We conclude that the trial court properly exercised its discretion in denying the plaintiffs' request to dismiss or postpone the motion for summary judgment until a receiver was appointed who would conduct discovery. Sections 180.1431 and 180.1432(1), STATS., on which the Jorgensens rely for their right to the appointment of a receiver, provide that the court "may"

appoint a receiver in a judicial proceeding to dissolve a corporation.

■

The trial court decided that it made sense to hear the summary judgment first, because if there were no triable issues of fact on the claims that the Jorgensens asserted entitled them to dissolution, the request for the appointment of a receiver would be moot. This is a reasonable decision based on a reasonable preference for conserving judicial resources. The Jorgensens have provided no authority for the proposition that they are entitled to the appointment of a receiver to conduct discovery based solely on the allegations of the complaint. The Jorgensens knew well in advance of the hearing how the court intended to proceed, and they, by their counsel's own admission, did not object to this procedure. The Jorgensens had no reasonable basis for expecting the court to exercise its authority under § 802.08(4), STATS., under these circumstances, and the court acted reasonably when it declined to do so.

*Direct Action for Breach of Fiduciary Duty of Majority Shareholders*

The Jorgensens seek damages for themselves for a breach of fiduciary duty by the four directors and majority shareholders. The trial court held that in *Read,* we decided that Wisconsin law does not permit minority shareholders in a nonstatutory closely held corporation to file an action on their own behalf against the directors and controlling shareholders for damages. *Read,* 205 Wis. 2d 551, 556 N.W.2d at 768. On appeal, the Jorgensens point to *Grognet v. Fox Valley Trucking Service,* 45 Wis. 2d 235, 172 N.W.2d 812 (1969), and case law from other jurisdictions, which, they claim, permit a claim for breach of fiduciary duty

773

to minority shareholders in this case. The defendants argue that *Read* is controlling and does not permit the claim. We conclude that *Read* is not controlling because, unlike the claim in *Read*, the Jorgensens' complaint claims an injury that is not primarily an injury to the corporation.

In *Read*, a minority shareholder, Read, filed suit against the directors and majority shareholders and the corporation claiming misappropriations of assets and self-dealing by the directors and majority stockholder through their transactions with other corporations in which they were stockholders but he was not. *Read,* 205 Wis. 2d at 562, 556 N.W.2d at 770. Read sought damages on a claim of breach of fiduciary duty as well as damages for a claim brought on behalf of the corporation. The trial court dismissed the derivative action, concluding that Read was not an appropriate shareholder to represent the corporation in that action. *Id.* at 569, 556 N.W.2d at 772. We affirmed that decision as an appropriate exercise of the trial court's discretion. *Id.*

As to Read's direct claim for damages, the trial court determined that there was no cause of action under *Rose v. Schantz*, 56 Wis. 2d 222, 201 N.W.2d 593 (1972), because the allegations of the complaint, if true, meant that the resulting primary injury was to the corporation. In *Rose*, the plaintiff stockholder alleged that two officers and directors of the company were engaging in a scheme to deplete the cash reserves of the corporation so that they could successfully engage in a competing business. The supreme court held that since the primary injury was to the corporation and not to the individual plaintiff stockholder, he could not bring a direct action against the directors.

After the trial court's determination that his complaint did not state a direct cause of action, Read sought to amend the complaint to add an allegation that the corporation was a closely held corporation. The trial court denied the motion as futile. It reasoned that under *Rose* and *McGivern*, a shareholder in a close corporation that was not a statutory close corporation under §§ 180.1801–180.1837, STATS.,[3] could not bring as a direct action a claim that belonged to the corporation. *Read*, 205 Wis. 2d at 574, 556 N.W.2d at 774.

On appeal, we agreed with the trial court that the injury alleged in the complaint was primarily injury to the company, not to Read as an individual shareholder, and a direct action was therefore unavailable under *Rose*. *Read*, 205 Wis. 2d at 570, 556 N.W.2d at 773. We then addressed Read's argument concerning the attempt to amend his complaint. Read argued that the trial court should not have denied the motion to amend because, while *Rose* might currently be the law in Wisconsin, the trend was to treat shareholders in close corporations more like those in partnerships. *Id.* This was exemplified, Read argued, by Wisconsin's enactment of the statutory close corporations statute. That statute permits a corporation with fifty or fewer shareholders to elect to become a statutory close corporation. Section 180.1803, STATS. The manner of election is prescribed by statute, *id.*, as are numerous requirements that then govern the corporation. *See* §§ 180.1805–180.1837, STATS. Under § 180.1833, a broad array of relief is available to shareholders in a statutory close corporation when those in control are acting in an "illegal oppressive, fraudulent, or unfairly prejudicial" manner to the shareholder,

---

[3] Enacted as 1983 Wis. Act 340, § 180; repealed and recreated by 1989 Wis. Act 303, § 13.

§ 180.1833(1)(a), and in certain other circumstances, § 180.1833(1)(b) and (c). The relief includes actions for damages by individual shareholders. *See* § 180.1833(2)(a)11.

We rejected Read's argument and agreed with the trial court that "an adoption of Read's theory would eviscerate the current statutes distinguishing between statutory and non-statutory close corporations." *Read,* 205 Wis. 2d at 574, 556 N.W.2d at 774. Because of the "limited value" of the amendment to the complaint and because of the imminent trial date, we concluded that the trial court did not erroneously exercise its discretion in denying the amendment. *Id.*

The Jorgensens' complaint alleges waste and mismanagement of corporate assets—injuries primarily to the corporation. Under *Rose,* any claim resulting in those injuries belongs to the corporation, not the Jorgensens. Under *Read,* the fact that the corporation is a close corporation does not alter the result, since Water Works is not a statutory close corporation.[4] However, the Jorgensens argue that they have also alleged injuries that are not primarily to the corporation but are primarily injuries to themselves as individuals. The complaint alleges that the defendant majority shareholders and directors breached their fiduciary duty to the Jorgensens and caused injury to the Jorgensens by paying themselves fees and bonuses which are, in fact, dividends, to the detriment of the Jorgensens; and caused injury by removing the Jorgensens from the board of directors and controlling the corporation as if they were the sole shareholders with

---

[4] We assume that Water Works has not elected statutory close corporation status because there is no such allegation in the complaint and no such assertion in the briefs or other submissions.

no obligations to the Jorgensens. We agree with the Jorgensens that this alleges an injury that is primarily to the Jorgensens, not primarily to the corporation.

Because we concluded in *Read* that the direct action was based on an injury primarily to the corporation, we did not decide the issue presented here: whether the minority shareholders in a non-statutory close corporation have a direct action for breach of fiduciary duty by the directors and majority shareholders that results in an injury primarily to the minority shareholders as individuals. We are persuaded that Wisconsin has recognized such a cause of action and that enactment of the statutory close corporations statute did not alter that common law.

In *Grognet,* the court held that a majority stockholder cannot take the position that his self-interest is superior to that of a minority stockholder; nor can directors and managing officers claim that their self-interest and self-protection are justification for denying the rights of minority stockholders.[5] *Grognet,* 45 Wis. 2d at 241, 172 N.W.2d at 816. The court stated:

> Directors and managing officers occupy the position of quasi trustees toward stockholders with respect to their shares of stock. Since the value of their shares and all their rights are affected by the

---

[5] In *Grognet v. Fox Valley Trucking Service,* 45 Wis. 2d 235, 172 N.W.2d 812 (1969), the directors and officers of the corporation, who were also the majority shareholders, refused to answer questions about their actions as officers and directors on the ground that their answers might incriminate them. The issue was whether this constituted an illegal and fraudulent act within the meaning of former § 180.771, STATS., 1967–68, which has since been revised, renamed and renumbered as § 180.1430, STATS., "GROUNDS FOR JUDICIAL DISSOLUTION."

conduct of the directors, it has been said that a trust relationship exists between the stockholders and the directors and from this relationship arises the fiduciary duties of the directors toward the stockholders in dealings which may affect the stocks and the rights of the stockholders. [Citations omitted.] A majority of jurisdictions hold that a director is a trustee only as to the corporation itself, but the better rule, although a minority view, is that he is also a trustee for an individual stockholder. [Citations omitted.] Wisconsin has long recognized that directors are trustees for stockholders. [Citations omitted.]. . . This court . . . has firmly maintained that officers of a corporation must treat stockholders with fidelity and good faith. . . .

*Id*. at 241–42, 172 N.W.2d at 816.

We are aware of no published cases in Wisconsin that apply *Grognet* in allowing a direct claim for a breach of a fiduciary duty by directors and majority shareholders to minority shareholders. However, cases since *Grognet* have recognized that *Grognet* established that directors and officers of a corporation owe a fiduciary duty to individual shareholders as well as to the corporation. Although deciding that the claim before it belonged to the corporation, the court in *Rose* stated:

> It is true the fiduciary duty of a director is owed to the individual stockholders as well as to the corporation [citing *Grognet*]. Directors in this state may not use their position of trust to further their private interest. [Citations omitted.] Thus, where some individual right of a stockholder is being impaired by the improper acts of a director, the stockholder can bring a direct suit on his own behalf

778

> because it is his individual right that is being violated.

*Rose*, 56 Wis. 2d at 228, 201 N.W.2d at 597. *See also McGivern v. Amasa Lumber Co.*, 77 Wis. 2d at 241, 260, 252 N.W.2d 371, 380 (1972); *Driver v. Driver*, 119 Wis. 2d 65, 74, 349 N.W.2d 97, 102 (Ct. App. 1984).

Courts in other jurisdictions that, like Wisconsin, recognize a claim for breach of fiduciary duty by directors and majority shareholders to minority shareholders have permitted such claims in circumstances factually similar to those alleged here. *See e.g., Willes v. Springside Nursing Home Inc.*, 353 N.E.2d. 657 (Mass. 1978) (breach of fiduciary duty where majority stockholders and directors of close corporation removed plaintiff as officer and director and severed him from payroll without legitimate business purpose); *McDonald v. United States Die Casting & Dev. Co.*, 541 So. 2d 1064 (Ala. 1989) (minority shareholder entitled to trial on direct action claim that a "constructive dividend" was paid to the majority shareholder without payment to him of a proportionate amount). *See also Brown v. Bryant*, 562 So. 2d 485, 492–94 (Ala. 1990). *See Sugarman v. Sugarman*, 797 F.2d 3, 7 (1st Cir. 1986) (cataloging acts to "freeze out" minority shareholders in close corporation, in violation of fiduciary duty).

We conclude that, prior to the enactment of the statutory close corporations statute, Wisconsin common law recognized a direct action by individual minority shareholders for breach of fiduciary duty by directors and majority shareholders resulting in injury to the minority shareholders that was not an injury primarily to the corporation. We next consider whether the enactment of that statute preempted this common law right such that only shareholders in a close corpo-

ration that elects statutory status as provided in the statute may now bring such a claim for relief.

Where there is a common law doctrine relevant to the issue presented by the parties and a statute would change the common law, the legislature must clearly express its intent to statutorily preempt common law rights. *Esser Distributing Co. v. Steidl*, 149 Wis. 2d 64, 68, 437 N.W.2d 884, 885 (1989). There is nothing in the statutory close corporation statute that expresses an intent to preempt the existing common law, such as language that it provides the exclusive remedies for close corporations. *See State ex rel. Shroble v. Prusener*, 185 Wis. 2d 102, 110, 517 N.W.2d 169, 172 (1994) (provision in recount statute that it was "the exclusive judicial remedy" expressed unambiguous legislative intent that the statute was the exclusive means to challenge canvassing errors). One purpose of the statutory close corporation statute is to provide a greater range of remedies for shareholders in close corporations. *See* STATUTORY CLOSE CORPORATION SUPPLEMENT TO THE MODEL BUS. CORP. ACT § 16 cmt., Vol. 37, THE BUSINESS LAWYER 269 (Proposed Official Draft 1981)[6] That purpose is certainly not a clear expression of intent to preempt those remedies that were available at common law.

We conclude that the Jorgensens' claim at common law for breach of a fiduciary duty to them as individuals by directors and majority shareholders was not altered by the enactment of the statutory close corpora-

---

[6] Wisconsin's statutory close corporation law is patterned after the STATUTORY CLOSE CORPORATION SUPPLEMENT TO THE MODEL BUS. CORP. ACT. Russ Whitesel & Kenneth Davis, Wisconsin's *New Statutory Close Corporation Law*, WISCONSIN BAR BULLETIN 9 (Dec. 1984).

tions statute. This is not inconsistent with our holding in *Read*, where we rejected an argument that the enactment of the statute expanded the rights at common law for those close corporations not electing statutory status. Here, the claim the Jorgensens wish to assert as a direct action was recognized at common law prior to the enactment of the statute.

Since the complaint states a claim for a breach of fiduciary duty to the Jorgensens as individual shareholders and since the answer raises factual issues, we move to the next step of the summary judgment methodology. We conclude that the defendants' submissions show that there are issues of fact on this claim. Duane Jorgensen's testimony provides evidence that there was a verbal agreement among all the shareholders that they would all be directors and Duane would oversee management of the company, and this was the basis for his initial contribution to the company. His testimony also provides evidence that the profits of the company had, since 1989, been divided among all six of the shareholders; the other four directors removed him and Sharon from the board of directors and they stopped all payments to them; and this was done to cut them out of the management of the company and of their share in the profits of the company, in violation of the verbal agreements, so that the four could pay themselves more. Mary Tesch's affidavit avers that the corporation's records show the payments were officers' compensation, not dividends, and in other ways her affidavit disputes Duane Jorgensen's testimony. However, this creates, not eliminates, factual disputes. It may be that at trial the defendants will submit evidence that will persuade a jury that the actions the Jorgensens complain of were not motivated by the individual defendants' desires to increase their share of the

profits of the company to the detriment of the Jorgensens and were not a breach of their fiduciary duty as directors and majority shareholders. However, there are factual disputes that entitle the Jorgensens to a trial on this claim.

*Dissolution of the Corporation*

The Jorgensens' complaint also asked for a dissolution of the corporation under § 180.1430, STATS.,[7] and the appointment of a receiver. We agree with the trial court that, as a matter of law, there is no basis for a dissolution on certain statutory grounds: deadlock, § 180.1430(2)(a) and (c); misapplication or waste of corporate assets, § 180.1430(2)(d); and illegal or fraudulent acts by the majority shareholders, § 180.1430(2)(b). The only evidence supporting any of the Jorgensens' claims is that which we have described in our discussion of the claim of breach of fiduciary duty. We conclude that that evidence—Duane Jorgensen's testimony—does not provide evidence of any of these grounds.

However, we reach a different conclusion with respect to the ground of "oppressive" conduct under § 180.1430(2)(b), STATS. The plain language of para. (2)(b) tells us that oppressive conduct need not be fraudulent or illegal conduct. However, the term "oppressive" or "oppression" is not defined in ch. 180, STATS., and we are unaware of any Wisconsin case defining or discussing this term as used in § 180.1430. We therefore look for guidance to other jurisdictions

---

[7] See note 2 for the text of § 180.1430, STATS.

that have construed statutes that provide for judicial dissolution on the grounds of oppressive conduct.[8]

The definition of "oppressive conduct" generally employed for the purpose of such a statute is: "burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of the company to the prejudice of some of its members; or a visual departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely." *Baker v. Commercial Body Builders, Inc.*, 507 P.2d 387, 393, (Or. 1973).[9] We adopt this definition, adding the following observations. This definition is intended to be broad and flexible, rather than narrow. *Fix v. Fix Material Co.*, 538 S.W.2d 351, 358 (Mo. Ct. App. 1976). In the context of a close corporation, oppressive conduct of those in control is closely related to breach of the fiduciary duty owed to minority stockholders. *Baker*, 507 P.2d at 394; *Fix*, 538 S.W.2d at 358.[10]

---

[8] At least thirty-one states have legislation permitting a shareholder to petition for judicial dissolution of a corporation on the ground of oppressive conduct by the majority or controlling shareholders, as well as on grounds of illegality, fraud and corporate waste. *See* Robert B. Thompson, *The Shareholders Cause of Action for Oppression*, Vol. 48, THE BUSINESS LAWYER 699, 709 n.70 (1993).

[9] *See also Giannotti v. Hamway*, 387 S.E.2d 725, 731 (Va. 1990); *Skierka v. Skierka Bros.*, 629 P.2d 214, 221 (Mont. 1981); *Robblee v. Robblee*, 841 P.2d 1289, 1293 (Wa. App. 1992); *Maschmeier v. Southside Press, Ltd.*, 435 N.W.2d 377, 380 (Iowa App. 1989); *Fix v. Fix Material Co.*, 538 S.W.2d 351, 358 (Mo. Ct. App. 1976).

[10] "Oppression" has also been analyzed as the "frustration of the reasonable expectations of the shareholders." *See Gimpel v. Bolstein*, 477 N.Y.S.2d 1014, 1018 (N.Y. Sup. Ct. 1984); *Land-*

■ We conclude that the same evidence that creates genuine issues of material fact with respect to the Jorgensens' direct claim for a breach of fiduciary duty also creates genuine issues of material fact concerning whether the individual defendants acted in an oppressive manner toward the Jorgensens. The Jorgensens are therefore entitled to a trial on their claim for judicial dissolution.[11]

The Jorgensens' request for the appointment of a receiver is part of their claim for judicial dissolution. The appointment of a receiver in a proceeding for judicial dissolution is discretionary. *See* §§ 180.1431(2); 180.1432(1), STATS. The trial court did not reach this issue because of its disposition of the claim for judicial

---

*strom v. Shaver*, 561 N.W.2d 1, 8 (S.D. 1996). This test has the virtue of focusing on the particular context, and therefore, on the specific problems of a close corporation relationship, *see* Robert B. Thompson, *The Shareholders Cause of Action for Oppression*, Vol 48, THE BUSINESS LAWYER 699, 712–13 (1993). However, it is not appropriate in every situation, such as when the shareholders have recently acquired shares in a pre-existing corporation. See *Gimpel*, 477 N.Y.S.2d at 1019. We view the broad "burdensome, harsh and wrongful conduct" definition we have adopted as including consideration of the frustration of the reasonable expectations of shareholders, when that is appropriate.

[11] Section 180.1430, STATS., provides that a court "may dissolve a corporation" (emphasis added) in an action by a shareholder if the specified grounds are established. Our decision should not be read as requiring the court to grant dissolution if the Jorgensens establish oppressive conduct. Because it is premature given the present posture of the case, and the issues argued before the trial court and on appeal, we do not decide whether or under what circumstances a trial court must dissolve a corporation if a statutory ground is established.

dissolution. In the proceedings upon remand, the court will have the opportunity to consider whether it should exercise its discretion to appoint a receiver under either §§ 180.1431(2) or 180.1432(1).

*Derivative Claim*

After deciding that the Jorgensens could not bring a claim for a breach of fiduciary duty to themselves as individuals, the trial court considered whether they were entitled to assert, as derivative claims, any claims on behalf of the corporation. The court concluded they could not, because they did not comply with the requirements of § 180.0742, STATS., which provides:

> Demand. No shareholder or beneficial owner may commence a derivative proceeding until all of the following occur:
> (1) A written demand is made upon the corporation to take suitable action.
> (2) Ninety days expire from the date on which the demand was made, unless the shareholder or beneficial owner is notified before the expiration of 90 days that the corporation has rejected the demand or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

We conclude that the trial court correctly decided that the defendants were entitled to summary judgment on any claim the Jorgensens sought to assert as a derivative claim because of their failure to comply with the statutory notice provisions.[12]

---

[12] The complaint does not use the term "derivative" or allege that the Jorgensens are asserting any claim on behalf of the corporation. The Jorgensens argue that the notice objection to a derivative action was not raised in the motion for summary

Mary Tesch's affidavit averred that based on a review of the corporate records, and her personal knowledge, no written demand to take suitable action as required by § 180.0742, STATS., had been made on the corporation. In response to this affidavit, Duane Jorgensen's affidavit averred that he directed his attorney to make a written demand under § 180.0742, and that written demand was made by letter dated July 22, 1996, attached to his affidavit. The letter is from Stephen Willett, Jorgensens' counsel, and is addressed to defendants James Barber, Doreen Barber, Gary W. Tesch and Mary H. Tesch, but not to Water Works. In this letter, Willett informed those persons that he represents the Jorgensens; and that after reviewing the notices of the last shareholders meeting and board of directors meeting he found them defective because they did "not follow the requirements set forth in Chapter 180 of the Wisconsin Statutes or the bylaws set forth for the corporation." The letter continues:

judgment. However, we note that the lack of notice was raised in the defendants' reply brief on that motion, after the Jorgensens argued in their brief opposing the motion that one of the claims in the action was a derivative claim on behalf of the corporation. The defendants submitted the affidavit of Mary Tesch concerning the lack of notice and the Jorgensens, in response, submitted Duane Jorgensen's affidavit with an attached letter from his counsel, which, Duane averred, he had directed his counsel to send. The question of whether this letter complied with the statutory notice requirement was argued by both counsel at the hearing on the motion for summary judgment. The Jorgensens' counsel made no objection to consideration of this issue. There is no merit to the Jorgensens' contention that the defendants did not timely or properly raise this issue in their motion for summary judgment.

Be that as it may, my clients wish to resolve this matter with the following proposal:

(1) They be reinstated as directors of the corporation;

(2) Their weekly fees of $600 each per week be reinstated;

(3) They will cease being active participants in the daily management of the corporation and resign as officers of the company;

(4) Aside from their statutory duties as members of the board of directors they will cease all together being involved with the corporation.

Willett stated that if this proposal was unacceptable, the Jorgensens authorized him to investigate commencing a judicial proceeding to dissolve Water Works. A response, Willett stated, was due within seventy-two hours after receipt of the letter.

We agree with the trial court that the July 22 letter did not meet the requirements of § 180.0742, STATS.[13] It is not addressed to the corporation but to the individual majority shareholders. The only act it complains of are the defective notices but it does not explain what the defects are and does not request that the corporation take any action with respect to the notices or the meeting. Rather, the letter proposes a resolution of disputes between the Jorgensens on the one hand and the majority shareholders on the other. The response time of seventy-two hours, in and of itself, is an indication that this is not a demand letter within the meaning of § 180.0742 which gives the cor-

---

[13] The Jorgensens do not argue that the July 24, 1996 letter from Attorney Tuscherer, attorney for Water Works, makes the July 22 letter a proper demand letter under the statute, and we conclude that it does not do so.

poration up to ninety days to take the "suitable action" and still avoid suit.[14]

*Breach of Contract*

The Jorgensens argue that Duane Jorgensen's deposition testimony is evidence that there were agreements among the shareholders which the defendant shareholders breached. The fundamental flaw in this argument is that the complaint does not allege a claim for breach of contract against the individual defendants and does not even mention agreements among the shareholders.[15] Since the complaint does not state a claim for breach of contract, we go no farther in the summary judgment analysis. *See Grams*, 97 Wis. 2d at 338, 294 N.W.2d at 476–77. The Jorgensens did not seek to amend their complaint to allege a claim for

[14] The trial court decided that the lack of notice and any pleading deficiency for a derivative action could be cured, and therefore dismissed "without prejudice" any derivative action in favor of Water Works, Inc. The Jorgensens appealed that dismissal, and the defendants did not cross-appeal the "without prejudice" condition of the dismissal. Therefore, we have addressed the notice issue. However, we observe that the trial court's conclusion that there was no evidence of corporate waste or mismanagement of corporate assets, a conclusion with which we agree, is inconsistent with a dismissal without prejudice of the derivative claim. We also observe that in *Read v. Read*, 205 Wis. 2d 558, 567–69, 556 N.W.2d 768 (Ct. App.1996), we held that the trial court correctly determined that the shareholder's request for dissolution of the corporation and appointment of a receiver made him an inappropriate representative for a derivative action.

[15] The allegations in the complaint concerning the loan the Jorgensens made to the Tesches and related agreements are pertinent to the fourth cause of action only, which is not an issue in this appeal.

breach of contract before the trial court, and the hearing on the summary judgment proceeded based on the causes of action they alleged in their complaint. We will not now consider new causes of action.[16]

## CONCLUSION

To summarize, we affirm the trial court's dismissal of the derivative action without prejudice on the ground that the Jorgensens did not comply with the statutory notice requirements for a derivative action. We reverse the trial court's dismissal of the Jorgensens' claim against the individual defendants for a breach of fiduciary duty that resulted in an injury primarily to the Jorgensens as individual shareholders and remand this claim for trial. We also reverse the dismissal of the claim for judicial dissolution based on oppressive conduct and remand that claim for trial.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

---

[16] Our decision does not prevent the trial court from considering a motion to amend the pleadings in the proceedings after remand.